### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NDANGO NELSON GWAPADINGA, | : | |
| AND LOUIS NDIFOR, | : | |
| *On behalf of themselves and others similarly* | : | |
| *Situated,* | : | |
| Plaintiffs, | : | Civil Action No. 1:22-cv-00672-DLF |
| | : | |
| v. | : | |
| | : | |
| FESCUM INC. AND FOLORUNSO | : | |
| IJITI, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

### JOINT MOTION TO APPROVE SETTLEMENT

Plaintiffs, NDANGO NELSON GWAPADINGA AND LOUIS NDIFOR (the "Named Plaintiffs") and Defendants FESCUM INC., AND FOLORUNSO IJITI ("Defendants") (collectively, the "Parties"), by and through their respective attorneys, hereby inform the Court that the Parties have reached a resolution on this matter, move for approval of their Settlement Agreement and Release (the "Settlement Agreement"), and request that the Court order the dismissal of this case with prejudice.

## I.    FACTUAL BACKGROUND

Plaintiffs are former Direct Support Professionals who worked for Defendants. Plaintiffs have sued Defendants in federal court alleging that Defendants failed to pay their Direct Support Professionals minimum and overtime wages. Specifically, Plaintiffs allege Defendants did not pay its employees minimum wage or overtime premiums, and that employees were required to drive their personal vehicles without reimbursement or pay out of pocket for a cab/ride sharing for work-related travel, and they were not compensated for time spent in training required by Defendants.

## II.    PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

Before filing this lawsuit, Plaintiffs' counsel conducted a thorough investigation into the merits of the potential claims and defenses. Plaintiffs' counsel focused their investigation and legal research on the underlying merits of the potential collective action members' claims, the damages to which they may be entitled, and the likelihood of collective action-certification. Plaintiffs' counsel obtained and reviewed documents from the Named Plaintiffs and conducted in-depth interviews with the Plaintiffs.

On March 10, 2022, the Named Plaintiffs filed suit alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., the District of Columbia Minimum Wage Revision Act ("DCMWRA"), D.C. Code §§ 32-1001, *et seq*., the District of Columbia Wage Payment and Wage Collection Law ("DCWPCL"), D.C. Code §§ 32-1301, *et seq*., and the District of Columbia Municipal Regulations ("DCMR"), 7 DCMR § 7-900 *et. seq*. The Named Plaintiffs filed the suit as a collective action on behalf of themselves and all other similarly situated current and former Direct Support Professionals. Defendants deny the allegations and assert that their employees were paid properly according to applicable laws.

Following the filing of the complaint, the Parties engaged in discovery. All counsel here have litigated numerous collective actions involving claims such as those herein and were able to narrow and exchange the information and discovery needed to assess potential resolution.

On July 10 and July 17, 2024, Plaintiffs and Defendants engaged in mediation and negotiated in earnest with the assistance of Arthur Peabody Jr. serving as mediator.  While the two mediation sessions resulted in impasse, they were successful in allowing the parties to explore the issues in the case, including the amount of potential damages as issue.  Indeed, after mediation, counsel for the parties met in-person on August 28, 2024, during which counsel for the parties continued to explore settlement.  Ultimately, the parties reach a negotiated resolution in principle

2

on October 2, 2024 and reduced their agreement to a formal document (the "Settlement Agreement," attached hereto as Exhibit D), which was fully executed on November 21, 2024. The parties now present the Settlement Agreement to the Court for approval.

### III.    SUMMARY OF THE SETTLEMENT

The Settlement Class Members are defined as individuals who worked for Defendants as Direct Support Professionals at any time between March 10, 2019, and the date of execution of the Settlement Agreement. In consideration for the Parties entering into the Settlement Agreement and the fulfilment of promises made therein, the Parties agree to the following payment structure:

a.  <u>Payments to Named Plaintiffs</u>:  Defendants shall pay:
- $14,000 to Named Plaintiff Ndango Nelson Gwapadinga.
- $14,000 to Named Plaintiff Louis Ndifor.
These payments represent approximately four times the named Plaintiffs' alleged unpaid wages.

b.  <u>Payments to Opt-In Plaintiffs</u>: Each Opt-In Plaintiff will receive an amount equal to double their alleged unpaid wages, as specified in Exhibit A to the Settlement Agreement. This payment represents alleged unpaid wages and alleged liquidated damages under the FLSA.

c.  <u>Payment to Plaintiffs' Counsel</u>: Defendants shall pay $129,975 to Joseph, Greenwald & Laake, P.A. for attorneys' fees and costs.

Upon the Court's preliminary approval of the settlement, Plaintiffs' Counsel, at its sole expense, will mail an agreed-upon Notice of Collective Action Settlement (attached as Exhibit B) and Opt-In Claim Form (attached as Exhibit C) to the last known address of each Individual on Exhibit A within fourteen (14) days.  Each individual will have sixty (60) days from the date the first Notice of Collective Action is mailed (the "Notice Period") to submit a valid Opt-In Claim Form to Plaintiffs' Counsel via U.S. Mail.  Plaintiffs' Counsel will provide an update after 30 days and a final update detailing all valid Opt-In Forms received at the close of the Notice Period.

Payments to all Opt-In Plaintiffs will be issued within six (6) months of the conclusion of the opt-in period, or by September 30, 2025, whichever is later.

In addition, in exchange for the Settlement Payments provided under the Settlement Agreement, any and all claims of any kind of Named Plaintiffs will be released against Defendants and related entities and persons, as described more fully in the Settlement Agreement.

## IV.   ARGUMENT

Courts in this district apply a two-part test to determine whether to approve an FLSA agreement. *Davis v. Kettler Mgmt.,* No. CV 21-3351 (TJK), 2022 WL 17146742, at *1 (D.D.C. Nov. 22, 2022). "First, the Court must ensure the agreement resolves a 'bona fide dispute'—that is, it 'reflects a reasonable compromise over issues that are actually in dispute.'" *Id.* (quoting *Carrillo v. Dandan Inc.,* 51 F. Supp. 3d 124, 132 (D.D.C. 2014)). Then, "the Court should confirm the agreement is substantively fair." *Id.* When a proposed FLSA settlement agreement includes the payment of attorneys' fees, "courts regularly assess the reasonableness of the fee award," considering "the percentage of recovery that is comprised of attorneys' fees, as well as the relationship between the costs incurred and the fees recovered." *Eley v. Stadium Group,* 236 F. Supp. 3d 59, 63 (D.D.C. 2017) (citing *Sarceno v. Choi,* 78 F. Supp. 3d 446, 452 (D.D.C. 2015)).

### A.   There is a *Bona Fide* Dispute.

A *bona fide* dispute exists when the Parties dispute "Plaintiffs' entitlement to any additional compensation at all, and also the amount of wages, if any, that Defendants owe to them." *Eley,* 236 F. Supp. 3d at 64 (citation omitted). Courts also consider whether a defendant "still denies all wrongdoing and liability" as demonstrative of a *bona fide* dispute. *Davis,* 2022 WL 17146742, at *1 (internal quotation marks omitted). Here, the parties dispute the amount of unpaid wages and

overtime owed to Plaintiffs, and Defendants expressly deny any and all liability to Plaintiffs. Accordingly, the Settlement Agreement represents a good faith compromise of a *bona fide* dispute between the Parties.

### B.    The Settlement is Fair and Reasonable.

"Once a bona fide dispute has been established, the court must consider 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Trout v. Select Grp. Fed. LLC,* No. CV 21-1684 (RBW), 2023 WL 6583828, at *3 (D.D.C. Oct. 10, 2023) (citation omitted). Specifically, the Court focuses on the "fairness of the process used by the parties to reach settlement and the practical ramifications of the settlement." *Carrillo,* 51 F. Supp. 3d at 132.

The Court considers three factors in making this determination: (1) whether the settlement was "the product of overreaching by the employer"; (2) whether it was "the product of negotiation between represented parties following . . . [a]rm's length bargaining"; and (3) whether "there exist serious impediments to the collection of a judgment by the plaintiff." *Eley,* 236 F. Supp. 3d at 63 (citation omitted). Importantly, the Court "should be mindful of the strong presumption in favor of finding a settlement fair." *Sarceno,* 78 F. Supp. 3d at 451 (internal quotation marks and citation omitted). "Indeed, courts must be aware that 'after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'" *Id.* (citation omitted).

### 1.    The Proposed Settlement is Not a Product of Employer Overreach.

To determine whether a settlement is the product of employer overreach, courts in this district consider "where the settlement amount falls between plaintiffs' position and defendants' position." *Sarceno,* 78 F. Supp. 3d at 451. When the proposed agreement "provides total damages closer to that asserted by the plaintiffs than the defendants," courts have found that the proposed

agreement "would not appear to be one that is the product of employer 'overreaching.'" *Carillo,* 51 F. Supp. 3d at 133–34.  In this case, the parties hired a neutral, third-party consultant to prepare a damages estimate, based on the universe of hours worked and pay data for all individuals in the putative collective.  To move this case towards a prompt resolution, the Defendants (reserving all rights) did not dispute the accuracy of this report.  The Settlement Amount further provides a compromise with "total damages closer to that asserted by plaintiffs than the defendants," as each Opt-In Plaintiff will receive an amount equal to double their alleged unpaid wages and each named Plaintiff will receive an amount equal to approximately four times their alleged unpaid wages; thus, dispelling the notion of employer overreach.  *Carillo*, 51 F. Supp. 3d at 133-34.

Plaintiffs' counsel considers the proposed Settlement Agreement to be fair and reasonable. Courts are "reluctant to reject the appraisal of the parties' counsel that the amounts agreed upon are a reasonable compromise" if such counsel has "extensive experience in pursuant and defending FLSA action generally and familiarity with the underlying facts in th[e] case."  *Sarceno,* 78 F. Supp. 3d at 451; *see also Meyer,* 2019 WL 11271381, at *7.  Plaintiffs are represented by Brian J. Markovitz and Michael Shinnar of Joseph, Greenwald & Laake, P.A., who have extensive experience litigating wage-and-hour cases in federal court.  Plaintiffs' counsel has "deep familiarity with the facts of this case." *Trout*, 2023 WL 6583828, at *5.  Plaintiffs' counsel has assessed the likelihood of success in this case and believe the Parties have reached a settlement that is fair, adequate, and reasonable.

## 2. The Settlement Agreement Was the Product of Arm's Length Bargaining.

Prior to reaching a settlement, the Parties engaged in the meaningful exchange of documents and information, as well as an investigation of the claims, and participating in several meaningful conferences to resolve all matters possible in advance of mediation.  The Parties

ultimately reached settlement following two rounds of mediation, an in-person meeting to continue to discuss the parties' respective positions, and other meetings on potential resolution. The Parties were each represented by competent and experienced counsel throughout the duration of this case. "The process by which the instant settlement was reached, therefore, bears all the indicia of one that leads to a just outcome." *Carrillo,* 51 F. Supp. 3d at 134; *see, e.g., Eley,* 236 F. Supp. 3d at 64; *Williams v. Stadium Group,* No. 1:22-CV-01221 (ACR), 2023 WL 3377389, at *2 (D.D.C. May 11, 2023).

### 3.   The Settlement Agreement Allows Plaintiffs to Recover Now.

Courts in this district recognize that "by settling now, the plaintiffs will obtain a recovery without further delay and without incurred additional litigation costs and additional attorney's fees and costs." *Carrillo,* 51 F. Supp. 3d at 134 (internal quotation marks and citation omitted). Moreover, an agreement "allows Plaintiff[s] to recover now and . . . not face any further litigation-related delay." *Davis,* 2022 WL 17146742, at *2 (internal quotation marks and citations omitted).

That is the case here. Although Plaintiffs could possibly have recovered more in litigation, any such recovery would be delayed and come at the expense of substantially increased attorneys' fees and costs, among other things. Moreover, it is possible that Plaintiffs would not have recovered anything at all. *See Carrillo,* 51 F. Supp. 3d at 134; *see also Meyer,* 2019 WL 11271381, at *9 (compiling cases). The Settlement Agreement provides immediate recovery and avoids the risks, burdens, and delays of litigation. Should the Court approve this settlement, Plaintiffs will receive their *pro rata* share of the settlement within the year, "which is undoubtedly quicker than this case could proceed to judgment given the typical time frame for discovery and the Court's heavy trial calendar." *Trout,* 2023 WL 6583828, at *6.

### 4.    The Attorneys' Fees are Reasonable.

"Courts scrutinize the attorney's fees allocated in proposed FLSA settlement agreements to ensure that the interest of plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of the relief counsel procured for the clients." *Meyer,* 2019 WL 11271381, at *9 (cleaned up).  Here, the Settlement Agreement provides Plaintiffs' counsel $129,975 in attorneys' fees and costs.  Courts routinely approve similar or greater attorney fee awards in settlements approved in this district. *See, e.g., Trout,* 2023 WL 6583828, at *7–8 (approving attorneys' fees representing 40% of the total settlement amount); *Eley,* 236 F. Supp. 3d at 65 (approving attorneys' fees representing approximately 37% of the total recovery); *Carrillo,* 51 F. Supp. 3d at 133–34 (approving attorneys' fees accounting for more than 50% of the total recovery).

Moreover, the reasonableness of the attorneys' fees is evidenced by the fact that the attorneys' fees recovery is less than the Plaintiffs' counsel's lodestar.  Plaintiffs' counsel has already committed over 288 hours to this litigation and accrued attorneys' fees of over approximately $220,000.00 using the Salazar Matrix, plus an additional approximately $18,000.00 in litigation costs, including for paying a third-party consultant who reviewed the pay records for current and former Direct Support Professionals and prepared a comprehensive spreadsheet detailing alleged unpaid wages and liquidated damages for each individual in the putative collective and the costs of administering the class action, including all mailings. The DCWPCL explicitly provides that attorneys' fees are to be "computed pursuant to the matrix approved *in Salazar v. District of Columbia*, 123 F.Supp.2d 8 (D.D.C. 2000)." *See* DCWPCL § 32–1308(b)(1) (also sometimes referred to as the enhanced Laffey Matrix). Courts in this district and elsewhere have recognized the Fitzpatrick/Laffey rates as appropriate hourly rates. *See, e.g., Service Employees Local 32BJ v. Preeminent Protection Services,* 415 F. Supp. 3d 29, 35–37 (D.D.C.

2019) (ordering fees to be paid for firm lawyers based on Laffey rates), *aff'd*, 997 F.3d 1217 (D.C. Cir. 2021); *Fraternal Ord. of Police, D.C. Lodge 1 v.Barry,* No. CIV.A.08-462 ESH/JMF, 2009 WL 430393, at *3 (D.D.C. Feb. 23, 2009), *report and recommendation adopted,* No. CIV.A. 08-0462ESH, 2009 WL 1033368 (D.D.C. Apr. 17, 2009); *MRS Enterprises v. Sheet Metal Workers Local 40,* No. CIV.A.05 1823 CKK/JM, 2007 WL 950071, at *4–5 (D.D.C. Mar. 29, 2007) (awarding fees for firm lawyers based on the Laffey matrix); *Society of Professional Engineering Employees v. Boeing Co.,* No. 05-CV-1251, 2015 WL 13643720, at *5 (D. Kan., Sept. 3, 2015) (approving Laffey rates for firm lawyers).  Therefore, the attorneys' fees and costs awarded under the settlement are reasonable.

### 5.    The Service Payments Are Reasonable.

"Service payments, which courts also refer to as 'incentive payments' or 'incentive awards,' are a common means of compensating plaintiffs in class or collective actions who have actively participated in the case." *Meyer,* 2019 WL 11271381, at *10 (citing *Cobell v. Jewell,* 802 F.3d 12, 25 (D.C. Cir. 2015)).

"In considering the reasonableness of proposed service payments, members of this Court "'have used several factors[,]' including 'the actions [that] the plaintiff has taken to protect the interests of the class, the degree to which the class benefitted from those action[s], and the amount of time and effort that the plaintiff expended in pursuing this litigation.'"  *Trout,* 2023 WL 6583828, at *8 (quoting *Little v. Wash. Metro. Area Transit Auth.,* 313 F. Supp. 3d 27, 35 (D.D.C. 2018)).  Courts also consider "the risk of retaliation faced by class and collective representatives." *Meyer,* 2019 WL 11271381, at *10.

Here, the Settlement Agreement provides for $14,000 each for the two Named Plaintiffs in this case.  This amount covers the Named Plaintiffs' alleged service payments.  The Named

Plaintiffs expended considerable time pursuing this litigation, including initial and subsequent interviews, assisting counsel in the investigation of the Settlement Collective's claims, communications with other members of the Collective, providing declarations in support of conditional certification, and attending and participating in two mediation sessions. Courts in this district routinely approve similar service payments. *See Lorenzo v. Prime Communs., L.P.,* No. 5:12-CV-69-H-KS 2020 U.S. Dist. LEXIS 20960, *6 (E.D.N.C. Jan. 21, 2020) (approving service award of $20,000 for class representatives in wage and hour action); *Karic v. Major Auto. Cos.*, 09 CV 5708 (CLP), 2016 U.S. Dist. LEXIS 57782, *25 (E.D.N.Y. Apr. 27, 2016) (same); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976 (E.D. Pa. Dec. 1, 2004) (same); *accord Randle v. SunTrust Bank, Inc.*, Civil Action No. 18-1525 (TJK), 2024 U.S. Dist. LEXIS 29178, *32 (D.D.C. Feb. 21, 2024) (approving "service award of $175,000 to each class representative" in race discrimination case); *Jones v. Chopra*, Civil Action No. 18-2132 (BAH), 2023 U.S. Dist. LEXIS 164699, *21-22 (D.D.C. Sept. 15, 2023) (explaining that "the proposed $50,000 service award to be distributed to each named plaintiff, though high, appears reasonable" in a race discrimination case).

## V.    CONCLUSION

The Settlement is fair and reasonable, and parties respectfully request the Court approve the Settlement Agreement.

WHEREFORE, the Parties pray the Court approve the Settlement Agreement as requested and dismiss the case with prejudice.

Dated: December 13, 2024

Respectfully submitted,

/s/ Brian J. Markovitz
Brian J. Markovitz
DC USDC Bar. No. 481517

/s/ Cullan E. Jones
Cullan E. Jones, Esq.
District of Columbia Bar No. 1046743
cjones@fordharrison.com
FORDHARRISON LLP
401 East Jackson Street, Suite 2500
Tampa, Florida 33602-5133
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

/s/ Michal Shinnar
Michal Shinnar
DC USDC Bar. No. MD0033
Joseph Greenwald & Laake, P.A
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200 (tel.)
(301) 220-1214 (fax)
bmarkovitz@jgllaw.com
mshinnar@jgllaw.com

*Counsel for Defendants*

*Counsel for Plaintiffs*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December 2024, a true and correct copy of the foregoing document was served on the Court's e-filing system, and thereby served on all counsel of record.

**/s/ CULLAN E. JONES_____**
Cullan E. Jones, Esq.